FILED

2016 Sep-30  AM 11:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| EDWIN OMAR PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 5:15-cv-01037-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Edwin Omar Perez, himself a former employee of the Social Security Administration, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB").  Mr. Perez timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 21).

## I.    Introduction

Mr. Perez was 57 years old on his alleged disability onset date of December 7, 2006.  His past work experience includes employment as an eligibility worker for the Social Security Administration.  (Tr. at 699).  Mr. Perez claims that he became disabled due to pain and physical dysfunction stemming from herniated discs in his neck and back and diverticulitis.  (Tr. at 112, 693).

Formerly employed as an eligibility worker for the Social Security Administration, Mr. Perez was granted a disability retirement by the Office of Personnel Management ("OPM"), effective March 6, 2007, under the Federal Employees Retirement System ("FERS") .

FERS disability retirement required the claimant to apply for Social Security DIB.

Because the procedural history of the instant case is irregular, the court includes the following discussion by the Administrative Law Judge:

> In August 2006, the claimant applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Program (OASDI), 42 U.S.C. § 401 et seq., and under the Supplemental Security Income for the Aged, Blind and Disabled Program (SSI), 42 U.S.C. § 1381, et seq. (sometimes referred to herein as the Act).  He later filed new applications, which the Appeals Council consolidated with the previous applications.  He initially alleged his disability onset date to be August 1, 2005, but that date was amended to December 7, 2006.

The claimant's applications were denied initially and on reconsideration [a]t his request, an Administrative Law Judge ("ALJ") held a hearing.  After considering the hearing testimony and other information in the record, the ALJ concluded that the claimant could perform his past relevant work.  Therefore, the ALJ found that the claimant was not disabled.

The claimant asked the Appeals Council to review the AL[J]'s decision.  On October 7, 2009, the Appeals Council found no reason to review the ALJ's decision.

Thereafter, the claimant sought review of the Commissioner's final decision in the United States District Court for the Middle District of Florida, Orlando Division.  That court reversed the decision of the Commissioner under sentence four of 42 U.S.C. § 405(g) and remanded the case for further proceedings.  Thereafter, the Appeals Council vacated the previous final decision and remanded the case for further proceedings.

On remand, the ALJ held another hearing.  The claimant, represented by an attorney, and a vocational expert ("VE") testified at the hearing.   After considering the hearing testimony as well as the evidence of record, the ALJ again found that the claimant was not disabled in a decision dated October 12, 2012.

Thereafter, the claimant sought review of the Commissioner's final decision in the United States District Court for the Middle District of Florida, Orlando Division.  On February 22, 2012, that Court reversed the decision of the Commissioner under sentence four of 42 U.S.C. § 405(g) and remanded the case for further proceedings once more.  Thereafter, the Appeals Council vacated the October 12, 2012 final decision and remanded the case for further proceedings on March 12, 2014.

This case is before the undersigned ALJ on that March 12, 2014 remand from the Appeals Council pursuant to the February 22, 2012 remand from the United States District Court for the Middle District of Florida, Orlando Division.

. . .

Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to take any further action needed to complete the administrative record and issue a new decision, consistent with the order of the District Court.

(Tr. at 688-89).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. *Id.* If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step

three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist in the local and national

economy that the claimant can perform; and, once that burden is met, the claimant must prove his inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process in this case, the ALJ found that Mr. Perez last met the insured-status requirements of the Social Security Act on December 31, 2011. (Tr. at 691). He further determined that Mr. Perez has not engaged in substantial gainful activity since the alleged onset of his disability, December 7, 2006, through his last insured date of December 31, 2011. *Id.* According to the ALJ, Plaintiff's cervical spine degenerative disc disease with spondylosis, protruding discs at C4-5, C5-6, and C6-7, and lumbar degenerative disc disease with bulging discs at L3-4 and L4-5 are considered "severe" based on the requirements set forth in the regulations. *Id.* The ALJ also determined that the plaintiff has the non-severe impairments of diabetes, sleep apnea, and right knee tendonitis. *Id.* However, he found that, through the plaintiff's date last insured, his impairments neither met nor medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 692).

Turning to the task of determining the claimant's RFC, the ALJ did not find Mr. Perez's subjective complaints of pain to be totally credible, and he determined

that Mr. Perez had the following RFC during the relevant time period before December 31, 2011:

> [H]e can lift 15 pounds occasionally; he can frequently lift 8 pounds; he should not lift above shoulder level; he can sit for 6 hours out of 8 hours for no longer than 30 minutes at a time without a sit/stand opinion, i.e. needing to change positions for 1 to 2 minutes; he can stand for 2 out of 8 hours but not longer than 30 minutes at one time without the ability to sit for 1 to 2 minutes; he can walk for 1 out of 8 hours but not more than 20 minutes at a time without the ability to sit for 1 to 2 minutes; he can occasionally climb stairs with a railing; he can occasionally kneel; he can occasionally crawl, stoop, and bend, but not repetitively; he should avoid ladders, scaffolds, CW, heavy, vibratory machinery, unprotected heights, and extreme cold exposure; he should avoid repetitive twisting of the cervical or lumbar spine.

(Tr. at 692, 696).

Based on this RFC, the ALJ determined at Step Four of the sequential analysis that, through the date last insured, the plaintiff was able to perform his past relevant work as an "eligibility worker." (Tr. at 699). An eligibility worker is defined under the rules as skilled work performed at a sedentary exertion level. *Id.* The ALJ determined that performance of such work did not require performance of any work-related activity not allowed by the RFC assessment. *Id.* The ALJ concluded his findings by stating that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from December 7, 2006, the alleged onset date, through December 31, 2011, the date last insured." *Id.*

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for

review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."   20 C.F.R. §§ 404.1527(e), 416.927(d).   Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

Mr. Perez alleges that the ALJ's finding is not supported by substantial evidence for three reasons.  First, he asserts that the ALJ erred as a matter of law by failing to give "great weight" to the Office of Personnel Management's ("OPM") decision that the plaintiff could no longer perform his past relevant work.  Second, the plaintiff argues that the ALJ failed to give proper weight to the plaintiff's treating orthopedist, Dr. Jackson.  Third, the plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.

### A. OPM's Determination

The Code of Federal Regulations is clear that "[a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision. . . .  We must make a disability or blindness determination based on social security law.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us."  20 C.F.R. § 404.1504.  However, the CFR does define as evidence of disability "[d]ecisions by any governmental or nongovernmental agency about whether or not you are disabled or blind."  20 C.F.R. § 404.1512(b)(1)(v).  The Eleventh Circuit addressed the weight due to findings of disability by other government agencies in *Bloodsworth v. Heckler*, stating that "[t]he findings of

disability by another agency, although not binding on the Secretary [now Commissioner], are entitled to *great weight*." 703 F.2d 1233, 1241 (11th Cir. 1983) (emphasis added); citing *Rodriguez v. Schweiker*, 640 F.2d 682, 686; *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *De Paepe v. Richardson*, 464 F.2d 92, 101 (5th Cir. 1972).

The Eleventh Circuit further discussed the issue the following year in *Falcon v. Heckler*, stating,

> The Deputy Commissioner of the Division of Worker's Compensation for the State of Florida found Falcon temporarily totally disabled from April 1979 up to at least November 1980. Generally, "[t]he findings of disability by another agency, although not binding on the Secretary, are entitled to great weight." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983).
>
> The definitions of disability under Florida's worker's compensation law and federal social security law differ. *Compare* Fla. Stat. Ann. Sec. 440.02(9) (West Supp. 1984) *with* 20 C.F.R. 404.1505(a)(1983). However, the Florida Supreme Court has interpreted the Florida statute in such a way that the Florida statute operates similarly to the definition under the federal regulations. *See Port Everglades Terminal Co. v. Canty*, 120 So. 2d 596 (Fla. 1960) (establishing variety of factors to consider in making disability determinations and shifting burden to employer only after employee has shown he can do only specially created job); *Southern Bell Telephone & Telegraph v. Bell*, 116 So. 2d 617 (Fla. 1959) (providing that ability to compete in job market measured by ability to work in any job with no mention of wage comparison). Because the two disability definitions actually are construed in a like manner, the ALJ erred in not giving great weight to the Florida agency's finding of temporary total disability and on remand must accord the finding its proper weight.

732 F.2d 827, 831 (11th Cir. 1984).  The discussion in *Falcon* appears to indicate that one reason an ALJ may cite for giving less than great weight to the finding of disability by another government agency is that the definition of disability used by the other organization differs from that used by Social Security.

On March 5, 2007, the OPM issued a letter to the plaintiff confirming his disability.  The letter states:

> Our records show that you claim you were disabled due to spine problems, degenerative disc disease, osteophyte formation, left hip degenerative changes, spinal stenosis, bulging discs, spondylitic bulge, ventral cord impingement, nerve root displacement, hiatal hernia, diverticulitis, and severe allergies.  However, in reviewing your medical records we have found you to be disabled for your position as a Telephone Service Representative, due to severe neck pain.

(Tr. at 174).  No further discussion from the OPM is provided in the record, and the OPM's letter does not specifically address which medical records were examined in reaching the conclusion of disability.  The plaintiff argues that the finding of disability is entitled to great weight, while the defendant argues that the ALJ appropriately articulated his reasons for failing to ascribe great weight to the OPM determination.

The ALJ addressed the OPM's decision as follows:

The record also contains a determination by the Office of Personnel Management ("OPM") that the claimant was unable to perform his prior work activity (Exhibit 17E).  However, there is no record as to what OPM considered in regard to making that determination; whether it involved determining physical limitations; or whether there were any administrative problems in the claimant returning to work. In finding disability for social security purposes, more than a general determination of disability is required and the undersigned is directed, by Social Security Rulings and Regulations to [] determine the claimant's ability to perform some such activities, among others, as ability to stand, walk, sit, bend, stoop, climb, balance, and engage in work activities requiring possible environmental exposures.  The undersigned asked the attorney at the hearing whether there was any additional input that he could provide or any additional records as to what was a [sic] considered and how it was considered by OPM, and the undersigned was met with an affirmative answer that the record contained all that was available.

Although the administrative law judge is required to give consideration and some form of weight to a determination by another agency that an individual is disabled, such is not binding on the Social Security Administration pursuant to 20 CFR 404.1504. Although this case does involve an unusual situation in which an employee of the Social Security Administration was found by OPM, the designated party for determining disability for the Social Security Administration as well as other federal employees to be unable to perform his previous job and in which another ALJ previously decided that he could perform that job, the administrative law judge is unable to ascertain from what is available the circumstances, tenor and specific restrictions that were implied or considered by OPM in its determination.  Hence, the administrative law judge must decline to give any significant weight to that determination in the absence of specific findings and conclusions other than a determination that regards an issue that is reserved to the commissioner and not OPM.

(Tr. at 698).

Eleventh Circuit case law consistently holds that disability determinations from other government agencies are entitled to great weight from the outset, and then, if there is good cause, the ALJ may articulate why he or she depreciates that weight. *See Boyette v. Commissioner of Soc. Sec.*, 605 F. App'x 777, 779 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981). By stating that only "consideration and some form of weight" is required for the OPM's determination, the ALJ applied the incorrect legal standard. (Tr. at 698). The ALJ is not bound by that other agency's opinion, as the CFR makes clear, but the ALJ must begin by giving the agency opinion great weight and step down from there if the facts warrant it, giving a clear explanation for why less than great weight is accorded.

Even if the ALJ was not required to state explicitly that the OPM determination was entitled to great weight, he failed to explain adequately why he gave only "consideration and some form of weight" to it. Unlike *Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009), where the court of appeals found that the ALJ "implicitly" assigned great weight to the VA's determination of a disability because he "continuously refer[red] to the VA's evaluations and disability rating throughout the evaluation process," the only reference to the OPM disability determination in this case is a passing reference. Indeed, the ALJ expressly did not

undertake a thorough analysis of the OPM determination because "the administrative law judge is unable to ascertain from what is available the circumstances, tenor and specific restrictions that were implied or considered by OPM in its determination." (Tr. at 698). The ALJ "declined to give any significant weight" to the OPM decision not because there were differences in the standards applied by the different agencies or because of shortcomings in the evidence considered by the OPM. He declined to give great weight precisely because the administrative record before him was incomplete. Nothing here indicates, unlike in *Kemp v. Astrue*, that the ALJ carefully considered the OPM determination and concluded that it was not entitled to great weight. The record here makes clear that the ALJ conducted no review of the basis for the OPM's decision.

The ALJ's explanation for his inability to review of the basis for the OPM determination was that neither plaintiff not plaintiff's counsel presented that evidence.[1] Yet the ALJ made no effort to obtain records from the Social Security Administration itself or the OPM that could shed light on the information before the OPM. Because the claimant was an employee of the Social Security

---

[1]   The ALJ wrote, "The undersigned asked the attorney at the hearing whether there was any additional input that he could provide or any additional records as to what was a [sic] considered and how it was considered by OPM, and the undersigned was met with an affirmative answer that the record contained all that was available."

Administration, and therefore, it was the SSA that submitted the application for disability retirement to the OPM for plaintiff, its own records should have contained information revealing whether, as claimant contends, the SSA certified to the OPM that there was no employment accommodation available for the plaintiff.  Likewise, there is no indication that the ALJ attempted to secure additional information from the OPM.

Although claimants must establish their eligibility for benefits, Social Security courts are inquisitorial, not adversarial, and the ALJ has a duty to fully and fairly develop the record where important information is missing.  *See Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).  That is particularly true here where the additional information is to be found in the records of the Social Security Administration itself as the plaintiff's employer.  If, as asserted by the claimant,[2] the SSA certified to the OPM that there was no

---

[2]   This assertion is not without some validity in fact.  OPM disability retirement eligibility rules require a finding that for the employee seeking retirement, "Accommodation of the disabling medical condition in the position held must be unreasonable."  5 C.F.R. § 844.103(a)(4).  Whether accommodation "in the position held" is possible or unreasonable is certified by the employing agency on a standard form, "Agency Certification of Reassignment and Accommodation Efforts."  OPM Standard Form 3112D (annexed to Claimant's Reply Brief, Doc. 19-1).  If the SSA completed such a form as part of plaintiff's OPM disability retirement (and there is no reason to believe he would have been approved for retirement without it), a copy of it should be in the plaintiff's employment records at the SSA.  The ALJ had a duty at least to look for such a record in the files of his own agency.  If the ALJ needed more information to understand the basis of the OPM's disability-retirement determination, he knew where to look.

accommodation available that would allow him to return to work at the SSA, this is significant information the ALJ was required to try to develop.

In sum, the court finds that the ALJ applied an incorrect rule of law by failing to assign "great weight" to the determination made by the OPM.  Further, his explanation for assigning only "some form of weight" was not based on substantial evidence, but, expressly, on no evidence.  The failure of the ALJ to take at least minimal steps to obtain additional information about the OPM's determination violated the Commissioner's duty to fully and fairly develop the record, especially where that additional information was likely in the Social Security Administration's own employment files.  Because the ALJ determined erroneously at Step Four of the sequential analysis that the plaintiff could perform his past relevant work, despite the OPM's determination (allegedly based in part on a certification of no reasonable accommodation by the SSA itself) that he could not, the ALJ never made any findings about his ability to perform other work available in the economy at Step Five of the analysis.

**B.  Treating Physician Diagnosis**

The plaintiff further argues that the ALJ erred by failing to give appropriate weight to the opinion of Dr. Jackson, the plaintiff's treating orthopedist.  A treating physician's testimony is entitled to "substantial or considerable weight unless

'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on

issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

The ALJ addressed Dr. Jackson's opinions, along with the opinions of several other doctors, in his RFC analysis at Step Four of the sequential process. He determined that Dr. Jackson's opinion was entitled to little weight, explain as follows:

> The record also contains multiple opinions from Dr. Jackson, the claimant's other treating orthopaedist. On June 29, 2006, Dr. Jackson opined that the claimant could return to activity as tolerated (Exhibit 5F). On October 6, 2006, Dr. Jackson opined that the claimant could return to activity as tolerated (Exhibit 5F). On October 30, 2006, Dr. Jackson opined that the claimant could return to activity as tolerated; however, he also limited the claimant to no bending, no sitting longer than 30 minutes without a 5-minute break, and maximum lifting of 15 pounds (Exhibit 4F). The limitations to "activity as tolerated" are vague as explained above. Moreover, the October 30, 2006 opinion is, on its face, ambiguous in multiple ways. First, it does not mention

whether this was a permanent restriction or, like others that Dr. Jackson had made, was for a short period, an important distinction considering there are others contained in the record indicating specific work-related excuses.  For example, there was one of September 20, 2006 indicating that the claimant should be excused to work on September 19, 2006 and on September 20, 2006; and another dated October 12, 2006 indicating that the claimant may return to work on October 16, 2006.  Another ambiguity that the undersigned feels compelled to point out is that sitting does require some form of bending.  Hence, if the claimant could not perform any bending at all he would be precluded from sitting in any manner.  The indication of no sitting for longer than 30 minutes without a 5-minute break is also unclear.  The ambiguity is that the undersigned is unable to ascertain from that form whether the five-minute break is a total break from any work at all or whether it implies that the claimant should be allowed to change position from sifting [sic] to standing or walking.  Also, the lifting restrictions are not specific.  Significantly, there are no indications of the frequency with which the claimant is capable of lifting 15 pounds.  There are also no indications as to whether such a weight could be lifted overhead and if so, how many times.  For those reasons, Dr. Jackson's opinion is entitled to little weight.

(Tr. at 697).

The testimony of a treating physician is entitled to substantial weight unless good cause is shown not to give the opinion substantial weight.  Good cause includes situations in which the treating physician's opinion is not supported by the record or his own findings or the evidence supports a different finding.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).  Although the

*Phillips* examples are not presumed to be exhaustive, the list does not support the idea that a treating physician's opinion may be discredited due to "ambiguity" in the opinion.  As the court of appeals explained in *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997):

> We do not evaluate the opinions of the physicians without guidance. The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *MacGregor*, 786 F.2d at 1053; *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 1985).  A similar preference for the opinions of treating doctors is found in the Commissioner's regulations:
>
> > Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.
>
> 20 CFR § 404.1527(d)(2).  The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.  *MacGregor*, 786 F.2d at 1053.  We have found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding.  *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Sharfarz v. Bowen*, 825 F.2d 278, 280–81 (11th Cir. 1987).  We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.  *See Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532–33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Indeed, in the case of ambiguity, the ALJ has a responsibility to expand the record in order to clarify the ambiguity. "[T]he ALJ generally has an obligation to develop the record. . ." *Ingram v. Commissioner*, 496 F.3d 1253, 1269 (11th Cir. 2007). The ALJ must order a consultative examination if one is needed to make an informed decision regarding the claimant's disability. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984), citing *Ford v. Secretary of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B). An ALJ may request a consultative examination "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" if the record indicates "a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established." 20 C.F.R. § 404.1519a(b)(4).

In the instant case, the ALJ did request that Dr. Levine, a Social Security Administration expert, review the plaintiff's medical records and testify at the hearing, but Dr. Levine did not examine the plaintiff. (Tr. at 698). He did not, however, reach out to Dr. Jackson for clarification of his medical opinion, nor did he reach out to the plaintiff's other treating physicians, Drs. Small and Patel, for clarification of their medical opinions, all of which the ALJ determined to be "ambiguous" and entitled to little weight. (Tr. at 696-97). The ALJ is not entitled

to simply supplant a treating physician's opinion for that of a *non-examining* consulting physician[3] based on the argument that the treating physician's opinion was just too hard to understand.  The ALJ does not fault Dr. Jackson's opinion for being contrary to the record, conclusory, or unsupported by evidence – he simply asserts that the opinion is "ambiguous."  If the treating physician's opinion is, in fact, ambiguous[4], the ALJ has a duty to develop the record sufficiently to clarify those ambiguities.  Ambiguity is not "good cause" to reject the treating physician's opinions without some effort by the ALJ to clarify the ambiguity.

### C. RFC Assessment

Finally, the plaintiff asserts that the ALJ's RFC analysis is not supported by substantial evidence.  Specifically, the plaintiff asserts that the ALJ's determination that the plaintiff would need to "change positions for one to two minutes every

---

[3]  The Eleventh Circuit law is clear that the opinion of a "nonexamining physician… could not provide 'good cause,' since we have held that the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985), citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1093–94 (11th Cir.1985).

[4]  For the most part, the examples of ambiguity in Dr. Jackson's opinion cited by the ALJ are not ambiguous.  When Dr. Jackson stated that the plaintiff could not sit "for longer than 30 minutes without a 5-minute break," the meaning was quite clear—every thirty minutes the plaintiff must be allowed not to sit, to get up from sitting for at least five minutes.  Also, the ALJ's assertion that sitting is the same as bending is an example of the ALJ substituting his own pseudo-expert opinion over that of the orthopedist.  The ALJ is not an expert in biomechanics and cannot express the opinion that sitting involves the same stresses on the spine as bending.  Also the ALJ found ambiguous Dr. Jackson's statement that plaintiff could not lift more than 15 pounds because it was not clear how frequently plaintiff could lift 15 pounds.  There is no ambiguity.  Dr. Jackson said fifteen pounds was the *maximum* the plaintiff could lift—period, full stop.

thirty minutes" is not supported by substantial evidence because the ALJ adopted Dr. Levine's findings rather than Dr. Jackson's, who is the plaintiff's treating physician. (Doc. 12, p. 24). It already has been determined that the ALJ erred in failing to either 1) give Dr. Jackson's opinion as a treating physician substantial weight or 2) articulate any valid reasons – other than supposed ambiguity –that Dr. Jackson's opinion is not entitled to substantial weight.

During the hearing, Dr. Levine attested that the plaintiff would need a sit/stand option and could not remain seated for more than 30 minutes at a time without the option to change positions. (Tr. at 728). Levine stated that the plaintiff would need to change positions for one to two minutes. *Id.* When asked about the discrepancy between his finding and Dr. Jackson's opinion that the plaintiff would need 5 minutes of position changes, Levine simply noted that it was "my opinion versus his." (Tr. at 732). The difference of opinion became significant when the Vocational Expert ("VE") was presented with hypothetical questions. When she was given a hypothetical including the one to two minute break for repositioning, she testified that the limitations "would allow access to the past work as an eligibility worker as described by the Department of Labor." (Tr. at 734). When asked about five minute breaks, the exchanges proceeded as follows:

[ALJ]  Okay.  Okay, okay, now if the breaks extend to five minutes, how would that affect those jobs?

[VE]  If during that five minute period he were to be off task, then that would be excessive off task time and that does preclude all work activity.

[ALJ]  All right.  But if he was able to sustain on task, what then?

[VE]  Well, if able to sustain on task, then that continues to allow access to the past work.

(Tr. at 735).  When the plaintiff's attorney questioned the vocational expert, the attorney clarified that it is the plaintiff's position that he needs the breaks to change position because his pain prevents him from being on task without such breaks.  *Id.* According to the plaintiff, those breaks would be off-task time.

Ultimately, opinions such as the claimant's residual functional capacity and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).  However, because the ALJ's evaluation of Dr. Jackson's opinion as a treating physician, as well as the ALJ's evaluation of the OPM finding of disability, erred as a matter of law, his RFC evaluation cannot be based on substantial evidence, as it is based on erroneous applications of law.

## IV.   Conclusion

In 1993, the Tenth Circuit determined, in evaluating a disability claim which had been pending for 10 years, that "[t]he Secretary is not entitled to adjudicate a case '*ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion,'" and remanded the case for an immediate award of benefits. *Sisco v. U.S. Dept. of Health and Human Services*, 10 F.3d 739, 746 (10th Cir. 1993) (internal citations omitted).   In 2001, the First Circuit acknowledged that,

> Some circuits have exercised what we view as a form of equitable power to order benefits in cases where the entitlement is not totally clear, but the delay involved in repeated remands has become unconscionable. *E.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (remanding for payment of benefits in light of "substantial evidence" of a severe mental disability and "considerable inexplicable delays" resulting in passage of ten years since application).   In such cases, our sister circuits have warned the Commissioner that administrative deference does not entitle the Commissioner endless opportunities to get it right. *See, e.g., Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996) (remanding for fifth administrative hearing, but cautioning "the agency that the Secretary is not entitled to adjudicate a case ad infinitum until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion.") (internal quotations omitted).

*Seavey v. Barnhart*, 276 F.3d 1, 13 (1st Cir. 2001) (internal footnotes omitted).

Such findings also have been reached within this circuit.  For example, in *Goodrich v. Commissioner*, the magistrate judge wrote in his Report and Recommendation, which was adopted by the district judge:

> Although the proper remedy for errors is generally not an award of benefits, but rather a remand for further proceedings, the Commissioner does not receive "endless opportunities to get it right." *Seavey v. Barnhart*, 276 F.3d 1, 13 (1st Cir. 2001) (citing *Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996).  "Some circuit courts have exercised … a form of equitable power to order benefits in cases where the entitlement is not totally clear, but the delay involved in repeated remands has become unconscionable."  *Seavey*, 276 F.3d at 13 (citing *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (remanding for payment of benefits in light of "substantial evidence" of a severe mental disability and "considerable inexplicable delays" resulting in passage of ten years since application)).
>
> . . .
>
> In this case, Plaintiff has a difficult to diagnose condition; she has some but not all symptoms of that condition, and it took her physicians some time to figure out what her impairments were.  However, on remand, rather than determine Plaintiff's limitations from dysautonomic syndrome by contacting Dr. Miles or a consultative examiner, the ALJ found that Plaintiff did *not* have dysautonomic syndrome.  Yet another remand would require the cause to go back to the ALJ for a *third time* and cause further delay.  The **ten-year** delay Plaintiff has experienced thus far is "unconscionable."  As the court said in *Rohan*, "Plaintiff need not 'wait with the patience of Job for yet another remand.[']"  306 F.Supp. 2d at 71.  Further administrative proceedings at this point will simply prolong her waiting and delay the ultimate receipt of benefits.

*Goodrich v. Commissioner*, 2012 WL 750291 *14 (M.D. Fla. Feb. 7, 2012) (internal footnotes omitted, emphasis in original); *see also Ray v. Astrue*, 2009 WL 799448 *8 (M.D. Fla. March 24, 2009) (remand for benefits after a fifteen-year delay, stating that "equitable considerations outweighed the need for further administrative adjudication.")

The instant case has been pending in some capacity since 2006. (Tr. at 688). The plaintiff's claim has been before an ALJ three times, before the Appeals Council twice, and before a United States District Court three times, including the instant case. The plaintiff has *undisputed* impairments, including cervical spine degenerative disc disease and lumbar degenerative disc disease, which are documented by medical records. According to the OPM, these impairments warranted the plaintiff's retirement due to disability.[5] The ALJ has not called into question these impairments, but rather has found that the claimant still is able to do past relevant work, despite the contrary OPM determination. Moreover, his treating physician, Dr. Jackson, opined that plaintiff needed a five-minute break every thirty minutes, and there has been no good cause identified for rejecting this

---

[5] The court is aware that the OPM's finding of disability is not binding and does not intend to insinuate that the Commissioner is beholden to the finding of disability by another agency. Nevertheless, it is entitle to "great weight," which the ALJ erroneously failed to do.

opinion.  The Vocational Expert testified "that [need for a five-minute break] does preclude all work activity." It appears the claimant is disabled.

The court could remand the action for further proceedings by the ALJ; however, there is a point at which continued delay becomes unjust.  That point has been reached.  Accordingly, the plaintiff's claim is due to be REVERSED and REMANDED with the instruction to AWARD BENEFITS.

An order of final judgment will be entered contemporaneously herewith.

DONE this 30th day of September, 2016.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE